OPINION OF THE COURT
D. Bruce Crew, III, J.
This is a motion by defendants to dismiss plaintiff’s complaint for failure to state a cause of action. A brief recitation of the historical background leading to this litigation is necessary to a full understanding of the issues involved.
It appears that a group of individuals were desirous of constructing a Marriott Hotel in Binghamton, New York. An application was made to the United States Department of Housing and Urban Development (HUD) for funds to finance said construction. A competing group of individuals known as the Kradjians, who owned an existing hotel in Binghamton, were desirous of preventing the construction of the Marriott allegedly in order to protect or enhance their own financial interests. The Kradjians retained the defendant law firm to render legal assistance toward that end. The defendants commenced both Federal and State actions on behalf of the Kradjians against HUD and the City of Binghamton, respectively, challenging the use of *210 Federal funds for financing construction of the proposed hotel. Additionally, the defendants met with members of the Board of Directors of Opportunities for Broome, Inc. (OFB), a private nonprofit corporation established to act as an advocate of the poor and disadvantaged, to discuss the merits of the use of Federal funds for the purpose mentioned. Apparently, OFB perceived that the use of Federal funds for the construction of a privately owned hotel was inappropriate and agreed to become a party-plaintiff in a Federal action against HUD to prevent such a Federal expenditure. Accordingly, defendant commenced such an action naming OFB as plaintiff together with seven individually named plaintiffs, one of whom is the plaintiff in the case at bar. The plaintiff, upon learning of his inclusion as a party-plaintiff in the Federal lawsuit, made a motion to have his named removed from all of the pleadings filed therein and then commenced this action against defendants for the nonconsensual use of his name as a party-plaintiff in the Federal lawsuit. The complaint pleads three causes of action: invasion of plaintiff’s right of privacy in violation of section 51 of the Civil Rights Law, abuse of process and prima facie tort.
Plaintiff’s complaint does not state a cause of action for abuse of process. The complaint does not allege any unlawful interference with plaintiff’s property or person arising from process compelling performance or forbearance of some prescribed act (Ashcraft Excavating Co. v Clark, 79 AD2d 722; Drago v Buonagurio, 61 AD2d 282, revd on other grounds 46 NY2d 778; Tender Trap v Town of Huntington, 100 Misc 2d 108). A summons and complaint alone can never have the necessary effect (T.N.J. Holding Corp. v Biaggi, Ehrlich & Lang, 90 AD2d 547).
Likewise plaintiff’s complaint does not state a cause of action for prima facie tort. One of the elements of prima facie tort is the infliction of intentional harm upon plaintiff by defendant (Belsky v Lowenthal, 62 AD2d 319, affd 47 NY2d 820; Lincoln First Bank v Siegel, 60 AD2d 270; Sommer v Kaufman, 59 AD2d 843). Plaintiff alleges that he was named as a plaintiff in the underlying action by defendant with reckless disregard to his rights. Such an allegation is insufficient since the tort requires that the defendant intended to harm plaintiff and that the intent be the sole motivating factor of the harmful action (Effective Communications West v Board of Coop. Educational Servs., 57 AD2d 485; Chin v American Tel. & Tel. Co., 96 Misc 2d 1070). Additionally, plaintiff has not alleged special damages fully and accurately with sufficient particularity to identify actual losses (Lincoln First Bank v Siegel, supra; Groat v Town Bd., 100 Misc 2d 326). Assuming that plaintiff corrected these pleading defects, the *211 court has grave misgivings of whether the conduct complained of here could be the basis of a prima facie tort. Prima facie tort is not intended to be a “catch-all alternative” for every cause of action not falling within a traditional tort classification, regardless of whether the appropriate allegations are pleaded (Burns Jackson Miller Summit & Spitzer v Lindner, 59 NY2d 314, 333; Broadway & 67th St. Corp. v City of New York, 100 AD2d 478, 487; Wehringer v Helmsley-Spear, Inc., 91 AD2d 585; Belsky v Lowenthal, supra). In a similar situation the Court of Appeals dismissed a cause of action for prima facie tort in which the plaintiff alleged that the defendant attorney had named him as a defendant in a lawsuit although there was no proper basis for so doing (Drago v Buonagurio, 46 NY2d 778, supra). “[Cjourts have not recognized any liability of the lawyer to third parties therefor where the factual situations have not fallen within one of the acknowledged categories of tort or contract liability” (supra, at pp 779-780).
The more vexing problem is whether plaintiff’s complaint alleges a Civil Rights Law violation. On this motion the truth of the allegations contained in the complaint must be assumed (Cohn v Lionel Corp., 21 NY2d 559) and plaintiff is entitled to every favorable inference that might be drawn from the complaint (Westhill Exports v Pope, 12 NY2d 491). Finally, our inquiry is not limited to whether the complaint, as worded, states a cause of action but rather, upon an examination of the four corners of the pleading, do the factual allegations contained therein indicate the existence of a cause of action (Guggenheimer v Ginzburg, 43 NY2d 268). Fairly read, the plaintiff’s first cause of action claims that the Kradjians retained defendant law firm to prevent the construction of the Marriott Hotel so that the Kradjians might continue the operation of their hotel without competition and the concomitant loss of revenues reasonably anticipated from such competition. Plaintiff claims that in furtherance of that purpose defendant commenced a Federal lawsuit using his name as a party-plaintiff without his consent to obtain a judicial determination that Federal funds could not be used to finance the construction of the competing hotel. Thus, plaintiff claims that the defendants used his name without his written consent for the purposes of the trade or business of their client.
Insofar as I can determine, this is an extraordinary application of the statute without precedent and requires, therefore, a somewhat detailed analysis of the statute and its purpose. It goes without saying that section 51 of the Civil Rights Law was enacted as a result of the Court of Appeals decision in Roberson *212 v Rochester Folding Box Co. (171 NY 538), which held that New York did not recognize a right of privacy cause of action and denied recovery to an infant whose picture was extensively used to advertise the defendant’s flour. As a direct response to that holding the Legislature enacted section 51 of the Civil Rights Law which provides, insofar as is applicable here: “Any person whose name * * * is used within this state for * * * the purposes of trade without the written consent first obtained [from such person] may * * * sue arid recover damages for any injuries sustained by reason of such use”.
It has been said that the social desirability and remedial purpose of this statute has resulted in its being given a liberal construction consonant with its over-all purpose (Spahn v Julian Messner, Inc., 18 NY2d 324). The. question, therefore, is what is its over-all purpose? The answer is not at all clear. The right of privacy at common law has been described as “not one tort, but a complex of four” which are “distinct and only loosely related” (Prosser, Privacy, 48 Cal L Rev 383, 389, 422). The four are: intrusion on plaintiff’s seclusion or solitude; public disclosure of embarrassing private facts about plaintiff; publicity which places plaintiff in a false light in the perception of the public; and appropriation of the plaintiff’s name or picture for the defendant’s advantage.
It is very clear that the Legislature created an appropriational tort when enacting section 51 of the Civil Rights Law. The question is whether plaintiff’s claim comes within the tort so created. The gravamen of the complaint does not truly sound in the traditional tort of appropriation, but rather, the tort encompassing publicity which places the plaintiff in a false light, to wit: that the plaintiff perceives that the proposed Federal expenditures are inappropriate and illegal when such is not the case. Coincidentally, the litigation may serve to advance the business interests of the defendants’ clients and the question is whether that fact brings plaintiff’s claim within the ambit of the appropriation cause of action created. Under the common-law definition of the appropriation tort it could probably be said to do so, since the common law contemplates the use of plaintiff’s name for defendant’s advantage whatever that advantage may be. The question, therefore, is whether the Legislature intended to adopt the common-law tort of appropriation or a more restricted cause of action. Based upon the most recent pronouncement of the Court of Appeals it would seem the latter. In interpreting our privacy statute the Court of Appeals has stated: “It is noteworthy * * * that, while concern engendered by [the Roberson] decision prompted the Legislature to enact sections 50 and 51, *213 these were drafted narrowly to encompass only the commercial use of an individual’s name or likeness and no more. Put another way, the Legislature confined its measured departure from existing case law to circumstances akin to those presented in Roberson. In no other respect did it undertake to roll back the court-pronounced refusal to countenance an action for invasion of privacy” (Arrington v New York Times Co., 55 NY2d 433, 439). Given that as the statute’s purpose, it encompasses only a commercial use of an individual’s name and then only in circumstances akin to Roberson (supra). Roberson involved the commercial exploitation of the infant’s picture.
It cannot be said that the defendants appropriated plaintiff’s name so that, in an associational sense, it would tend in any way to draw trade to the Kradjians’ business (see Flores v Mosler Safe Co., 7 NY2d 276, 284). The use of plaintiff’s name in the caption of the Federal litigation simply did not constitute the commercial exploitation of his name as commonly understood by the courts of this State in the legion of cases decided since the enactment of our privacy statute.
The closest case this court could find which bears light on the case at bar is Coleman v Ted’s Auto Sales (33 Misc 2d 739, affd 17 AD2d 827). In that case the defendant was a franchised dealer of the Ford Motor Company. The plaintiff was an attorney who specialized in the representation of franchised automobile dealers and allied automobile trades and was known in business, legal and judicial circles as such. It was alleged that defendant, for credit purposes and thus for purposes of trade, informed Dun and Bradstreet that plaintiff was the treasurer and one of the three directors of the corporate defendant when, as a matter of fact, plaintiff was not an officer or director of said corporation. The court in Coleman sustained the sufficiency of the complaint. However, it did so not on the basis of defendant’s submission of plaintiff’s name to Dun and Bradstreet, but upon the fact that the Dun and Bradstreet report, which contained the information imparted to it by the defendant, was circulated to those interested in the defendant’s trade. That circulation to those interested in the trade constituted the use of plaintiff’s name as a medium of advertisement for the purpose of obtaining credit and thereby offended our privacy statute. So while the mere use of the plaintiff’s name in Coleman would have constituted the common-law tort of publicity which placed plaintiff in a false light, it was not that use which provided plaintiff with a viable cause of action. It was the circulation of the report for the purpose of obtaining credit which brought the offensive use within the statutory proscription.
*214 In the case at bar, accepting all of plaintiff’s allegations as true, the defendants are guilty of using plaintiff’s name nonconsensually and in a manner which placed him in a false light. His name was not used commercially, however. He was named as a litigant in a Federal lawsuit to test the legality of proposed Federal expenditures. The fact that the ultimate outcome of that litigation might inure to the benefit of defendants’ clients is not sufficient to bring plaintiff within our narrowly drafted right of privacy statute. Accordingly, defendant’s motion is in all respects granted and plaintiff’s complaint is dismissed, without costs.