Lionell Elijah **WILLIAMS**, Plaintiff,

v.

**NEWSWEEK, INC.** and Nathan **McCall**, Defendants.

No. 2:98cv1130.

United States District Court,
E.D. Virginia,
Norfolk Division.

Aug. 27, 1999.

Lionell Elijah Williams, Victoria, VA, pro se.

Sherry A. Ingram, Kevin T. Baine, Charles C. Moore, Williams & Connolly, Washington, DC, for defendants.

### DISMISSAL ORDER

DOUMAR, District Judge.

Plaintiff, a Virginia inmate, brought this *pro se* action against Newsweek, Incorporated ("Newsweek") and Nathan McCall ("McCall") alleging that they used his picture in a Newsweek article without his consent and in violation of Virginia Code § 8.01–40 (Michie 1992). Presently before the Court is Newsweek's Motion to Dismiss and Plaintiff's Motion for the Entry of Default against Defendant McCall. For the reasons stated below Defendant's mo-

tion is **GRANTED** and Plaintiff's motion is **DENIED**.

### I. FACTUAL AND PROCEDURAL BACKGROUND

McCall wrote a memoir entitled *Makes Me Wanna Holler: A Young Black Man in America* about his troubles with drugs and crime as a young man in Tidewater, Virginia. Newsweek published an excerpt of the book in its February 7, 1994 issue. Along with the selection from the book, Newsweek published six photographs of McCall. One of the pictures is of McCall and his "Virginia prison buddies." Plaintiff, still incarcerated, alleges that he is one of the prisoners in the picture. Plaintiff did not consent to having this picture published.

### II. NEWSWEEK'S MOTION TO DISMISS

Defendant argues Plaintiff's claim should be dismissed because the publication of his picture was for a newsworthy purpose and was incidental to the article as a whole. Plaintiff contends that the article in Newsweek was for the commercial purpose of promoting McCall's book.

#### A. Motion to Dismiss Standard

The Fourth Circuit has held that a motion to dismiss under 12(b)(6) only should be granted in "very limited circumstances." *Rogers v. Jefferson–Pilot Life Ins. Co.,* 883 F.2d 324, 325 (4th Cir.1989). However, dismissal is appropriate if it appears that the plaintiff is not "entitled to relief under any legal theory which might plausibly be suggested by the facts alleged." *Harrison v. United States Postal Serv.,* 840 F.2d 1149, 1152 (4th Cir.1988) (citation omitted). *See also Schatz v. Rosenberg,* 943 F.2d 485, 489 (4th Cir. 1991). When reviewing the legal sufficiency of a complaint, a court must construe the factual allegations "in the light most favorable to plaintiff." *Schatz,* 943 F.2d at 489 (quotation omitted). Additionally,

since Plaintiff is proceeding *pro se*, the Court should liberally construe his complaint. *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir.1978).

Although the Court should not usually look beyond the pleadings when evaluating a motion to dismiss, the Court may consider the magazine article and photograph in question as part of the complaint. *Gasner v. County of Dinwiddie*, 162 F.R.D. 280, 282 (E.D.Va.1995); *Branch v. Tunnell*, 14 F.3d 449, 453 (9th Cir.1994); *Fudge v. Penthouse Int'l, Ltd.*, 840 F.2d 1012, 1015 (1st Cir.1988). Since Plaintiff does not dispute the authenticity of the article submitted by Defendant, the Court will consider it when evaluating Defendant's Motion to Dismiss and will not convert Defendant's motion to a motion for summary judgment. *See id.*

**B. Virginia Code § 8.01–40**

Plaintiff brought this action pursuant to § 8.01–40(A) of the Virginia Code, which provides:

> Any person whose name, portrait, or picture is used without having first obtained the written consent of such person, or if dead, of the surviving consort and if none, of the next of kin, or if a minor, the written consent of his or her parent or guardian, for advertising purpose or for the purposes of trade, such persons may maintain a suit in equity against the person, firm, or corporation so using such person's name, portrait, or picture to prevent and restrain the use thereof; and may also sue and recover damages for any injuries sustained by reason of such use.

This statute provides the only remedy under Virginia law for a claim of invasion of privacy. *Brown v. American Broadcasting Co.*, 704 F.2d 1296, 1302 (4th Cir.1983); *Falwell v. Penthouse Int'l, Ltd.*, 521 F.Supp. 1204, 1206 (W.D.Va.1981). There is very little Virginia case law construing this provision, so courts applying Virginia law have relied upon the interpretation of the similarly-phrased New York law as conducted by New York Courts for guidance in construing this provision. *Town & Country Properties, Inc. v. Riggins*, 249 Va. 387, 457 S.E.2d 356, 362 (1995); *Falwell v. Flynt*, 797 F.2d 1270, 1277 (4th Cir.1986), *rev'd on other grounds, Hustler Magazine v. Falwell*, 485 U.S. 46, 108 S.Ct. 876, 99 L.Ed.2d 41 (1988); *Brown*, 704 F.2d at 1302; *Falwell*, 521 F.Supp. at 1207; *Berger v. Capitol Color Mail, Inc.*, Chancery No. 132587, 1995 WL 1056043, *1 (Va.Cir.Ct. Fairfax County Dec. 8, 1995).

### 1. *Newsworthiness Exception*

An exception exists to this provision, for items that are "newsworthy" or "matters of public interest." *Falwell*, 797 F.2d at 1278; *Berger*, 1995 WL 1056043 at *2. These items are not considered to be for advertising purposes or in trade. *Dallesandro v. Henry Holt & Co.*, 4 A.D.2d 470, 166 N.Y.S.2d 805, 806 (1957); *Finger v. Omni Publications Int'l, Ltd.*, 77 N.Y.2d 138, 564 N.Y.S.2d 1014, 566 N.E.2d 141, 144 (1990). This exception covers articles in newspapers and magazines, as well as pictures used to illustrate the articles. *Dallesandro*, 166 N.Y.S.2d at 806. The exception, however, will not apply if the picture bears "no real relationship to the article or the article is an advertisement in disguise." *Dallesandro*, 166 N.Y.S.2d at 806 (internal citations omitted). *See also Finger*, 564 N.Y.S.2d 1014, 566 N.E.2d at 144 (internal citations omitted). This exception is designed to balance the need for the dissemination of news and information against an individual's right to control the use of his likeness. *Falwell*, 797 F.2d at 1278; *Berger*, 1995 WL 1056043 at *2.

■ Defendant's position that this article reported on a newsworthy subject is well taken. McCall's book is a personal account of his involvement with drugs and crime as a youth in the Tidewater area of Virginia. Clearly, his story is a "matter of public interest." Newsweek published an excerpt of McCall's book in light of the immense public focus on the growing prob-

lem of violence and drug-related crime in the United States. The Newsweek article begins, "With President Clinton and practically every other politician in the country focused on the growing concern about violence ..." (Newsweek article at 46). The pictures are related to the article as they depict different stages in McCall's life. Consequently, Newsweek's article and the pictures contained in it fall within the "newsworthy" exception to Virginia

This conclusion is consistent with the decisions of other courts that have been faced with a similar situation. For example, in *Dallesandro*, 166 N.Y.S.2d 805, Plaintiff sued for the unauthorized use of his picture on a book jacket. *Id.* at 807. The book related a true story about a priest who attempted to fight terrorism and gangsterism on the New York waterfront. *Id.* The picture on the jacket was of the priest speaking to a longshoreman. *Id.* The court found that this use of the longshoreman's likeness was not for purposes of advertising or trade, despite that fact that it was placed on the book jacket. *Id.*

A similar conclusion was reached in *Finger*, 564 N.Y.S.2d 1014, 566 N.E.2d at 143, where the New York Court of Appeals found that the unauthorized use of the plaintiffs' picture with their six children in connection with a magazine article discussing research into caffeine-aided fertilization fell within the newsworthy exception to the statute. *Id.* at 144. The court concluded that a picture of a large family bore a real relationship to the subject of the article, despite the fact that the children were not conceived by the means described in the article. *Id.* at 144.

■ Plaintiff asserts that the article was for advertising purposes, because it was intended to boost sales of McCall's book. Even assuming Plaintiff's contention to be true, that does not establish Defendant's liability for the use of Plaintiff's picture. In *Dallesandro*, an argument could be made that the use was intended to increase sales of the book since the picture was on the book jacket. Similarly, in *Finger*, the article could have been construed as an attempt to increase funding and donations into the described research. However, "[t]he mere fact that defendants are spurred by the profit motive and engaged in the commercial exploitation ... does not negate their right to depict a matter of public interest ..." *Man v. Warner Bros., Inc.*, 317 F.Supp. 50, 52 (S.D.N.Y.1970) (involving the unauthorized picture of a person at the Woodstock festival in the trailer for the "Woodstock" film). Consequently, even if Defendants intended to promote McCall's book through the use of the article, that would not negate the fact that the article standing alone involved a matter of public interest.

### 2. Incidental Use Exception

■ Alternatively, Defendant also argues that Plaintiff's picture was incidental to the article as a whole. As well as the newsworthy exception, there is an exception to the statute for uses that are "incidental" to the purpose of the work. *Groden v. Random House, Inc.*, 61 F.3d 1045, 1049 (2nd Cir.1995); *D'Andrea v. Rafla–Demetrious*, 972 F.Supp. 154, 157 (E.D.N.Y.1997), *aff'd*, 146 F.3d 63 (2d Cir. 1998); *Marks v. Elephant Walk, Inc.*, 156 A.D.2d 432, 548 N.Y.S.2d 549, 552 (N.Y.App.Div.1989). A publisher only will be liable for the publication of an unauthorized picture if there is a "direct and substantial connection between the appearance of the plaintiff's name or likeness and the main purpose and subject of the work." *Id.*

In *D'Andrea*, 972 F.Supp. 154, the plaintiff's picture was used without his consent in a brochure providing information about a hospital's internship and residency programs. *Id.* at 155. The plaintiff was not identified by name or referred to in the brochure. *Id.* at 157. The court found that the use of his photograph was incidental to the main purpose of the document. His picture did not convey any information

about the program and did nothing more than fill up space on the page. *Id.*

■ Similarly, in this case, Plaintiff's picture appears to be incidental to the Newsweek article. The article focused on the author's story of his life. The six pictures in the article depicted the author in various stages of his life. Moreover, Plaintiff is not identified by name in the caption under the picture of McCall and "his prison buddies." Plaintiff argues that the use of his picture was deliberate because he was so handsome. Even if Plaintiff's assertion were true, that would not change the fact that the use of Plaintiff's picture was incidental to the article as a whole. The choice of his likeness was not directly related to the main purpose of the article.

## III. PLAINTIFF'S MOTION FOR DEFAULT

On December 17, 1998, the Court ordered Plaintiff's complaint filed. The Court then directed the Clerk to send copies of the Order and Plaintiff's complaint to Defendants, and requested Defendants waive service of the summons within thirty (30) days from the date thereof. Defendant Newsweek waived service of the summons; however, Defendant McCall did not. Consequently, the Court directed the United States Marshal's Office to serve a summons on Defendant McCall. An attempt to serve McCall was made, but he was unable to be located.

■ Plaintiff has moved for a default judgment based upon McCall's failure to answer his complaint. However, the Court has determined that Defendant McCall may not have received Plaintiff's complaint. Until a defendant answers or files a signed waiver of service, or until the United States Marshal is able to effect personal service, the Court cannot be certain that a Defendant has in fact received the complaint. As a result, the Court does not yet have personal jurisdiction over De-

fendant McCall and must **DENY** Plaintiff's motion for a default judgment.

Moreover, in light of the above analysis, the Court finds that it would be futile to continue to attempt to serve Defendant McCall. Plaintiff's allegations in his complaint fall within both the newsworthy and incidental exceptions to the Virginia Code. Consequently, Plaintiff's complaint is **DISMISSED** without prejudice against Defendant McCall.

## IV. CONCLUSION

For the reasons stated above this action is **DISMISSED**. Plaintiff may appeal from this Dismissal Order by forwarding a written notice of appeal to the Clerk of the United States District Court, U.S. Courthouse, 600 Granby Street, Norfolk, Virginia 23510. Said written notice must be received by the Clerk within thirty (30) days from the date of this Order.

The Clerk is **DIRECTED** to send a copy of this Order to Plaintiff and counsel for Defendants.

**IT IS SO ORDERED.**